Brenna K. Legaard, OSB #001658
  Email: Brenna.Legaard@klgates.com
K&L GATES LLP
  One SW Columbia Street, Suite 1900
  Portland, OR 97204
  Telephone: (503) 228-3200
  Facsimile: (503) 248-9085

*Attorneys for Plaintiffs*

### IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF OREGON

### PORTLAND DIVISION

| | |
|---|---|
| K.B, B.B., and R.B, minor children,<br><br>Plaintiffs,<br><br>vs.<br><br>PORTLAND PUBLIC SCHOOL DISTRICT,<br>an Oregon public school district,<br><br>Defendant. | Case No.<br><br>**COMPLAINT**<br><br>(Violation of the Americans with Disabilities Act, 42 U.S.C. §12101 et seq., 42 U.S.C. § 1983, and Title VI, 42 U.S.C. § 2000D)<br><br>**DEMAND FOR JURY TRIAL** |

### INTRODUCTION

Plaintiffs bring this action against defendant Portland Public School District ("PPS") for Violation of Title VI, 42 U.S.C. § 2000d, 42 U.S.C. § 1983, and the Americans with Disabilities Act, 42 U.S.C. §12101.

Plaintiffs K.B. and B.B. are African-American girls who have attended PPS schools since 2016. They are 17 and 16 years old, respectively. Both of them have encountered discrimination on the basis of their race throughout their educational careers at PPS in-person schools. They experienced pervasive peer harassment on the basis of their race, and when they

reported it to PPS staff they were accused of exaggeration and left unprotected. They have found a haven at PPS's Online Learning Academy ("OLA"), and after many years of struggling in school, they are flourishing.

Plaintiff R.B. is a PPS student who has autism spectrum disorder. He is unable to access educational services in person. When he has attended in-person school, he has exhibited and been punished for behaviors associated with his autism, and he simply could not meaningfully engage in academic tasks in an in-person environment. He is currently attending OLA where he attends mainstream classes at his grade level, and he is also flourishing.

PPS has announced a decision to close OLA and cease offering education on-line to any PPS student, forcing OLA students return to in-person PPS schools. In so doing, PPS will no longer make available an accommodation that has allowed R.B. to access mainstream educational services. It will also be eliminating an environment in which K.B. and B.B. have thrived without racial harassment from peers or race discrimination from staff, and by its own admission, PPS offers no other such environment. Closing OLA will deprive all of these children to equal access to educational services.

## JURISDICTION AND VENUE

1.      Jurisdiction is conferred on this Court pursuant to 28 USC § 1331, as this action arises under the Americans with Disabilities Act, 42 U.S.C. §12101 et seq. ("the ADA"), and Title VI of the Civil Rights Act, 42 U.S.C. § 2000d ("Title VI").

2.      This Court has personal jurisdiction over PPS because PPS is an Oregon School District with its principal place of operations in this state.

3.      Venue is proper in this judicial district under 28 U.S.C. § 1391(b) because the unlawful practices described herein have been committed in the District of Oregon, all parties reside in Multnomah County, Oregon, within the boundaries of the Portland Division of the District of Oregon.

4.      At all material times herein, PPS is located within Multnomah County and is a public school district organized and existing under the laws of the State of Oregon. At all times

relevant herein, PPS was the educational agency responsible for providing Plaintiffs with full and equal access to the public education programs and activities it offers in compliance with the requirements of federal law. PPS receives federal funding.

## FACTUAL BACKGROUND

5.      During 2020, PPS created the Online Learning Academy ("OLA") to better serve PPS families who wished to continue online education rather than return to in-person schooling. OLA currently serves just over 200 students, and unlike during COVID where students had no choice but to learn online, current OLA students are online because they and their families feel it best meets their needs. Many students, like K.B. and B.B., are escaping conditions in PPS schools such as racial bias by PPS staff and racial harassment from their peers. R.B. attends OLA because online education enables him to access mainstream curriculum and otherwise participate fully and equally in school, and his disability prevented him from being able to access the curriculum when attending school in-person.

6.      OLA disproportionately serves students in "underserved" categories. 71% of OLA students are "combined underserved" compared to 50% district-wide, and 48% are "historically underserved," compared to a district-wide rate of 33%. 24% of OLA students are special education students and 12.4% are Black. District-wide, 15.6% of students are in special education, and 8.3% are Black.[1]

7.      R.B. has autism spectrum disorder. He enrolled in OLA to access mainstream curriculum. Plaintiff R.B. is vulnerable to discriminatory discipline on the basis of his disability. His last year attending in-person school, when he exhibited behaviors that were a manifestation of his disability he was excluded from school, receiving dozens of disciplinary referrals and many out-of-school suspensions. As demonstrated by grades and teacher reports, he was unable

---

[1]https://www.pps.net/cms/lib/OR01913224/Centricity/Domain/207/Enrollment%20of%20Underserved%20Groups%202022-23.pdf

to learn in this setting, and he made little if any educational progress.  PPS has indicated that it will not permit him to attend in-person school as part of a mainstream class.

8.      Since he began attending OLA, R.B.'s grades are stellar and he has not experienced a single disciplinary action.  He is happy, thriving, and feels supported and successful.  He is accessing mainstream curricula alongside his non-disabled peers, which has proven impossible in in-person school. If he is forced to return to in-person school, PPS will have eliminated a reasonable accommodation that permits him to access educational services equally with his non-disabled peers, and he will be excluded from mainstream school on the basis of his disability.

9.      Plaintiffs K.B.  and B.B. are African-American girls.   Both have experienced discrimination throughout their academic careers at PPS schools.  Teachers have treated them as less capable and intelligent than they are, and they have not received the same level of support and encouragement as their non-African-American peers.  They have also experienced punishment for behaviors for which non-African-American peers are not punished, including unfounded accusations of misconduct, chastisement, and criticism from teachers.  They have experienced harassment and bullying on the basis of their race, they and their parents have informed PPS personnel about this harassment, and PPS has failed to take any meaningful, effective steps to stop it.  Instead, PPS staff have justified their non-response by accusing them of exaggerating.  The adultification, underestimation of their aptitude and intelligence, and lack of investment in their safety and well-being as compared to the investment made in that of their White peers has negatively impacted their mental health and educational attainment.

10.     PPS possesses actual knowledge that Black PPS students experience race discrimination from PPS staff throughout PPS schools.  PPS has openly acknowledged that African-American students are subject to discriminatory discipline in its schools, and PPS knows that nothing it has done has effectively protected its students from these acts of discrimination. In 2011, the PPS School Board adopted a resolution recognizing that "for every year that we have data… students of color are disciplined far more frequently than white students,"

acknowledging its responsibility to stop perpetuating these disparities, and committing to "significantly change its practices in order to achieve and maintain racial equity in education."[2] PPS has acknowledged its need and responsibility to "remedy the practices, including assessment, that lead to the over-representation of students of color in areas such as special education and discipline." *Id.* Additionally, by its own admission, PPS also subjects students to disabilities with disparate discipline.

11.     Despite explicit recognition of this problem and its legal and moral obligations over ten years ago, PPS has made no progress toward the elimination of discriminatory discipline in its schools. During a work session on January 10, 2023, PPS School Board members reviewed data on student discipline rates which established that students of color and students with disabilities are still disproportionately given referrals or suspensions compared to White and non-disabled peers. That is, despite its express admission that it needs to affirmatively act to prevent Black students from being discriminated against on the basis of their race, the PPS school board has actual knowledge that it has taken no such effective action, and acknowledges that Black students continue to experience race discrimination in school.

12.     Specifically, PPS data show that Black students are disciplined at more than three times the rate of White students. Native students receive suspension, referrals, and expulsion two and one half times more often. Students with disabilities are disciplined twice as often as their non-disabled peers.

13.     PPS understands that the discipline to which these children are subjected is intensely and irreparably harmful. At this meeting its Head of Research acknowledged and informed the School Board that research demonstrates strong links between school discipline, likelihood of dropping out, and eventual arrest and possible incarceration.

---

[2]https://docs.google.com/viewerng/viewer?url=https://www.pps.net/cms/lib/OR01913224/Centricity/Domain/4814/2.10.010-P.pdf

14.     It has been well established that discriminatory discipline perpetuates achievement disparities.[3]  Discriminatory discipline violates students' trust, weakens their sense of belonging at school, and interferes with their engagement in their educations, leading to lower educational attainment.

15.     PPS personnel also acknowledge that exclusionary discipline such as suspensions and expulsions do not improve behavior and do not make schools safer or more orderly.  If anything, they exacerbate problems by compounding disadvantages struggling students already face.

16.     Documented discipline such as suspension, referrals, and expulsion are a manifestation of racism by PPS staff members.  But documented discipline is not the only manifestation of racism in schools, it is merely one that leaves a paper trail. Race discrimination manifests in other ways as well.  As a result of racial bias, Black children receive less protection, support, and nurturing than White children of the same age.  They are chastised, reprimanded, and criticized for exhibiting behaviors that are not punished and may even be encouraged when exhibited by White children, such as speaking in class.  These acts of racial bias deprive children of a sense of safety at school and trust in adults such as teachers, which deprives them of access to educational in parity with their White peers.

17.     PPS has failed to eliminate the problem of racial bias in its staff, despite actual knowledge, and indeed open acknowledgement of both the problem, as manifested as discriminatory discipline, and the steps it needs to take to eliminate the problem. Children of color and children with disabilities experienced discriminatory discipline in PPS schools ten years ago, and they still do today.

18.     OLA offers a refuge from racial bias in school.   National media reports that children, specifically African-American students, can escape racism at school through online

---

[3] https://files.eric.ed.gov/fulltext/ED544799.pdf

learning.[4] K.B. and B.B. have found that online, their teachers support and encourage them in parity with their White peers, they are free from discriminatory punishment, and they are not vulnerable to peer harassment.

19.    OLA's discipline rates demonstrate that Black OLA students are free from discriminatory discipline at OLA. PPS schools average 471.9 referrals per 1000 during an academic year. At that rate, during the 2021-22 academic year, OLA students would have received at least 279 referrals based on the number of students in attendance alone. Considering the over-representation of over-punished populations, if OLA were a typical PPS school its discipline rate would have been significantly higher. But instead, it had only two referrals.

20.     By forcing the OLA students to resume in-person school, knowing that they face racism there that PPS has taken no effective steps to end, PPS is knowingly subjecting K.B. and B.B. to discrimination on the basis of race, and is acting with deliberate indifference to that discrimination.

## COUNT I

### Title II of the Americans with Disabilities Act, 42 U.S.C. §12101 *et seq*

21.    Plaintiffs incorporate every allegation above as if fully set forth herein.

22.    Plaintiff R.B. is a qualified individual with a disability under the ADA because his autism is a physical or mental impairment that substantially limits one or more major life activities.

23.    PPS receives federal funding.

24.    R.B. requires online schooling in order to enjoy meaningful access to the benefits of a public education. Depriving R.B. of online school will deprive him of the ability to access the benefits of a public education because it will mean that he is unable to access grade level educational services in parity with non-disabled peers.

---

[4] https://www.nytimes.com/2020/10/28/opinion/virtual-school-racism.html

25.     Offering online education is a reasonable accommodation.  It will not fundamentally alter any School District program or service.  The added cost of running OLA is not an unreasonable burden on PPS because on information and belief the costs of offering online education to a student with autism is significantly less expensive than the cost of educating that student in a self-contained classroom with a high staff to student ratio.

26.     Plaintiff R.B. has avoided discipline on the basis of his disability by attending OLA.  Should PPS force him to resume in-person school, he will once again be subjected to discipline on the basis of his disability.  He will endure irreparable harm to his mental health and denial of educational opportunity.

## COUNT II

## Title VI, 42 U.S.C. § 2000d

### (*Race Discrimination*)

27.     Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

28.     42 U.S.C. § 2000d, commonly referred to as Title VI, and its implementing regulations, prohibit discrimination in a federally-funded school on the basis of a student's race.

29.     Specifically, 42 U.S.C. § 2000d provides that "No person in the United States shall, on the ground of race, color, or national origin, be exclude from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."

30.     PPS is a recipient of federal funds.

31.     In in-person schooling at PPS, K.B. and B.B. have experienced discrimination on the basis of their race by PPS staff who have treated them less favorably than their White peers.

32.     K.B. and B.B. have experienced severe, pervasive harassment from their peers over the course of years.  PPS staff have known about this harassment and have failed to take any effective action to protect K.B. and B.B.

33.     This treatment created a hostile environment.  It interfered with K.B.'s and B.B.'s educational program, and would have interfered with the educational program of any typical African-American child of the same age.

34.     PPS, despite actual knowledge and adequate opportunity to learn of this misconduct, has systematically failed to act to remedy the harassment, discrimination, and disparate treatment of Plaintiffs K.B. and B.B.  PPS failed to take effective remedial measures to prevent further harassment and discrimination, allowing the behavior to continue.  PPS's response to the harassment was objectively unreasonable.  PPS was deliberately indifferent to the harassment by peers and acts of race discrimination by its staff.

35.     Plaintiff K.B. and B.B. have been able to escape racial discrimination by attending OLA. Should they be forced to resume in-person school, they will once again experience discrimination from PPS employees and racial harassment by their peers.

## COUNT III

## 42 U.S.C. § 1983

### (*Denial of Equal Protection*)

36.     Plaintiff re-alleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

37.     The Equal Protection clause of the Fourteenth Amendment to the U.S. Constitution prohibits discrimination based on a person's race.

38.     PPS's actions, in failing to take any effective action to prevent the disproportionate punishment of African-American children despite actual knowledge of the problem, and in allowing its staff to disproportionately punish and otherwise mistreat K.B. and B.B. tbecause of  their race, and in permitting and failing to prevent the relentless bullying and harassment of K.B. and B.B. due to their race, constitute a violation of the Equal Protection clause of the Fourteenth Amendment to the U.S. Constitution.

39.     Such actions and decisions of PPS have deprived K.B. and B.B. of the privileges and immunities secured by the U.S. Constitution and laws in violation of 42 U.S.C. § 1983. Liability and redress exist under 42 U.S.C. § 1983.

40.     K.B. and B.B. are free from bullying and harassment and from disparate treatment by PPS staff on the basis of their race while attending OLA.  In dissolving OLA and forcing K.B. and B.B. to resume in-person school where race-based bullying by peers and race discrimination by PPS staff remain widespread, PPS, an in particular the PPS School Board, will knowingly subject the African-American OLA students, including  K.B. and B.B., to discrimination on the basis of their race.

41.     As a direct result of the actions and conduct of PPS, K.B. and B.B. suffered and continue to suffer emotional distress, loss of companionship, loss of educational opportunities, and other damages to be proven at trial.

42.     As a result of NCSD's violation, Plaintiff is also entitled to her attorneys' fees and costs.

WHEREFORE, Plaintiffs pray for the following relief:

A.      A preliminary and permanent Order restraining PPS from ending its provision of online educational services through OLA until such time as PPS can provide appropriate in-person schooling which is equally accessible to R.B. and which is free from race discrimination and racial harassment;

B.      An Order adjudging the practices of PPS complained of herein to be in violation of the rights guaranteed to Plaintiffs under Federal law;

C.      Leave to add additional plaintiffs or claims by motion or any other method approved by the Court;

D.      For an award to Plaintiffs against PPS of all relief available in amounts to be determined at trial, with interest on such amounts;

E.      For an award of Plaintiffs' compensatory damages in an amount to be determined at trial;

F.      For an award of punitive damages in an amount to be determined at trial;

G.      For an award to Plaintiffs of attorney's fees, disbursements, and the costs of this action, and;

H.      For such other and further relief as the Court deems just and equitable.

Dated this 17th day of April, 2023.

Respectfully submitted,

K&L GATES LLP

By: */s/ Brenna K. Legaard*
    Brenna K. Legaard, OSB #001658
    Email: Brenna.Legaard@klgates.com
    Direct Dial: 503-226-5729

*Attorneys for Plaintiffs*